**Opinion issued September 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-13-00564-CR

———————————

### ROY DALE GLOVER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Case No. 14199

## O P I N I O N

Appellant, Roy Dale Glover, filed a motion for post-conviction DNA testing of biological evidence. After a hearing, the trial court found no reasonable probability that Appellant would not have been convicted had the results been available at trial. In his sole issue on appeal, Appellant challenges that finding.

We affirm.

## Background

On August 26, 1999, Appellant was charged by indictment with capital murder for the death of Roger Coberly. At trial, the State introduced a number of exhibits, including four statements from Appellant concerning the events surrounding Coberly's death. In his first two statements, Appellant denied having any involvement in or any knowledge concerning Coberly's death. In a third statement, Appellant admitted to being solely responsible for the death of Coberly and walked police through Coberly's home, describing the events as they had occurred. In his final statement, Appellant acknowledged being present during the murder but denied being the one to commit the murder. Instead, Appellant clamed a former friend of his, Shannon Sharp, committed the murder.

The State also offered the testimony of Bruce Shuman. Shuman testified that, on the night of the murder, Appellant had come to his house. It was after midnight. Appellant told Shuman that he was there to "get some clothes and stuff." Shuman returned to bed but heard Appellant gather some things and leave. When he woke up in the morning, Shuman discovered that a bag he takes with him when he works was missing. The bag contained, among other things, clothes, ropes, and spurs.

The next morning, Appellant was seen driving Coberly's car. Appellant drove the car into a mud pit by Coberly's house and could not get it out. He called a wrecker. Appellant did not have cash and gave the driver Coberly's computer as collateral.

Police later recovered Coberly's car from Sharp in Louisiana. Appellant told police that Sharp had stolen it from him. Shuman's bag was in the back of the car. In the bag was, among other things, a lead pipe and a brown towel. Shuman identified the towel as belonging to him. Multiple blood spots were found on the towel, and the blood was tested for DNA. The blood stains were from two "contributors." The major contributor was Coberly.[1] The minor contributor was not identified, but Sharp was excluded.

Police found Coberly on his property buried under a pile of sticks and other wood. A shirt had been wrapped around Coberly's body. Shuman identified the shirt as a shirt that had been left by a friend at his house. A neighbor of Coberly's testified that, after the murder, Appellant came by their house asking for a lighter, explaining he intended to burn a brush pile on Coberly's property. An autopsy determined that Coberly died from a blunt-force blow to the head, consistent with a blow by a lead pipe.

---

[1] Due to decomposition, Police were not able to obtain Coberly's DNA. They were, however, able to obtain his parents' DNA and his only sibling's DNA. The blood stains were determined to come from a descendent of Coberly's parents, but Coberly's only sibling was excluded.

After his conviction, Appellant filed a motion, seeking further DNA testing on the towel found in the bag in Coberly's car. As a result of that testing, Appellant was excluded as the minor contributor of blood on the towel. After a hearing, the trial court made the following findings:

2. State's Exhibit 98 [the brown towel] had been forensically tested prior to trial and was found to contain blood in various areas, none of which were linked to the defendant;

3. Following the Chapter 64 hearing . . . defendant was again excluded as a contributor to the blood stains;

. . . .

5. The post-conviction DNA testing does not alter the State's trial assertions regarding the source of the blood stains on State's Exhibit 98;

6. There is a considerable additional body of evidence from the trial that implicates the defendant in the death of . . . the decedent and supports the conviction of [defendant];

7. The court finds that the post-conviction DNA results are not favorable to the convicted person;

8. The Court finds that if the post-conviction DNA testing results had been available before or during the trial of the offense, there is not a reasonable probability that the person would not have been convicted.

## Jurisdiction

The State argues that we lack jurisdiction to consider this appeal, relying on *Whitfield v. State*, 409 S.W.3d 11, 11 (Tex. App.—Houston [1st Dist.] 2013), *rev'd*, 430 S.W.3d 405 (Tex. Crim. App. 2014) (*Whitfield I*). In *Whitfield I*, we

4

relied on *Holloway*, an earlier case from the Court of Criminal Appeals, and held that we lacked jurisdiction to review a trial court's findings concerning a motion for post-conviction DNA testing. *Id.* (citing *State v. Holloway*, 360 S.W.3d 480, 490 (Tex. Crim. App. 2013)).

The Court of Criminal Appeals granted Whitfield's petition for discretionary review. *Whitfield v. State*, 430 S.W.3d 405, 407 (Tex. Crim. App. 2014) (*Whitfield II*). On review, the court reversed its holding in *Holloway*. *Id.* at 409. Accordingly, "the courts of appeals have been given [legislative] authority to consider the sufficiency of the evidence as well as other grounds of appeal" for post-conviction DNA-testing motions. *Id.*

## Standard of Review & Applicable Law

After a person has been convicted, he can file a motion for forensic DNA testing of certain evidence containing biological material. TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1) (Vernon Supp. 2014). If the trial court grants the motion, the trial court is required to hold a hearing "and make findings as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." TEX. CODE CRIM. PROC. ANN. art. 64.04 (Vernon Supp. 2014).

In our review of the trial court's findings, "we afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-

5

to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); *see also Ex parte Gutierrez*, 337 S.W.3d 883, 894 n.34 (Tex. Crim. App. 2011) (citing *Rivera*). In contrast, "the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed *de novo*." *Rivera*, 89 S.W.3d at 59.

The State argues that, in order to establish that it is reasonably probable that Appellant would not have been convicted with the presence of the DNA test results, Appellant was required to establish that the test results would prove his innocence. This is incorrect.

In 2002, the Court of Criminal Appeals held that, in order to obtain the DNA test, the defendant would have to show there was a reasonable probability that the DNA would prove his innocence. *Kutzner v. State*, 75 S.W.3d 427, 438 (Tex. Crim. App. 2002), *superseded by statute as recognized in*, *Smith v. State*, 165 S.W.3d 361, 363–64 (Tex. Crim. App. 2005). Three years later, the court recognized that this holding had been superseded by statute. *Smith*, 165 S.W.3d at 363–64. The bill analysis to an amendment to the statute clarified that "[t]he defendant must prove that, had the results of the DNA test been available at trial,

there is a 51% chance that the defendant would not have been convicted." *Id.* at 364.

Whether a person would be convicted is an inquiry distinct from whether a person is actually innocent. *See Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (recognizing distinction between proving "innocence" and proving "just that he would be found not guilty by a subsequent jury"). Accordingly, actual innocence is no longer an inquiry in reviewing the significance of the post-conviction DNA test results. Instead, "[a] 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Gutierrez*, 337 S.W.3d at 892.

**Analysis**

Appellant argues that his exclusion as the minor contributor on the towel establishes that, if the DNA test had been admitted at his trial, he would not have been convicted. We disagree.

As an initial matter, we note that the DNA test results are not in conflict with the test results on the towel that were presented at trial. Appellant was never identified as a contributor to the blood found on the towel. Appellant suggests that, by not excluding him as a contributor, the presence of an unidentified minor contributor of blood created an inference that he was the minor contributor.

7

Even if we accepted this argument, proof that Appellant was excluded as the minor contributor, at best, functions only to "muddy the waters" of the evidence against him. *See id.* It does not "affirmatively cast doubt" on his conviction. *See id.* While it presented evidence that the towel contained the blood of an unidentified minor contributor, the State never relied on this fact as a basis for conviction. Instead, the State focused on the evidence establishing Appellant's presence at the scene of the crime and Appellant's confession that he was the sole person involved in Coberly's killing.

Appellant attempts to point out weaknesses in the evidence surrounding his conviction, such as the fact that Appellant gave four confessions and only implicated himself in one of them. All of this information was before the jury when it found him guilty, however. Excluding him as the minor contributor of blood on the towel would not have changed these claimed weaknesses or made them more relevant.

In certain circumstances, excluding a defendant as a contributor to DNA evidence can be considered exculpatory. *See Smith*, 165 S.W.3d at 364 (holding excluding defendant as contributor of seminal fluid found on female victim after sexual assault could be exculpatory). This is not one of those circumstances, however. The towel belonged to Shuman before Appellant took it on the night of the murder. Any number of people could have come in contact with the towel and

left blood on it prior to it coming into Appellant's possession. *See id.* (holding excluding defendant as contributor to weapon was not exculpatory when it could have been left on weapon before date of offense). Even if the contributor the DNA were known, this would not create any inference that Appellant was not guilty of the crime.

We hold the trial court did not err by finding that "if the post-conviction DNA testing results had been available before or during the trial of the offense, there is not a reasonable probability that the person would not have been convicted." We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Sharp.

Publish. TEX. R. APP. P. 47.2(b).