

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00055-CR

ROGER DALE MEDFORD                                 APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
### TRIAL COURT NO. 0584735D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Roger Dale Medford appeals from the trial court's finding that it was not reasonably probable that Medford would not have been convicted had the ordered postconviction DNA test results been available at his 1996 trial. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND REGARDING POSTCONVICTION MOTION

In 1996, a jury found Medford guilty of injury to an elderly individual—his mother, Carolea Eason—causing serious bodily injury and assessed his punishment at forty years' confinement. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West Supp. 2014). This court affirmed his conviction. *Medford v. State*, No. 2-96-568-CR (Tex. App.—Fort Worth Apr. 23, 1998, pet. ref'd) (not designated for publication); *see also Medford v. Medford*, 68 S.W.3d 242, 245 (Tex. App.—Fort Worth 2002, no pet.).

On March 26, 2010, Medford filed a postconviction motion for forensic DNA testing on items found at the crime scene, which was Eason's home that she shared with Medford: Eason's clothing, two hair samples and a blood sample collected from Eason's right hand, a towel, beer cans, and a flashlight. *See* Tex. Code Crim. Proc. Ann. art. 64.01(a-1)–(b) (West Supp. 2014). The trial court ordered DNA testing to be conducted on the two hair samples from Eason's right hand and the beer can found on the kitchen table. *See id.* art. 64.03(a) (West Supp. 2014). The DNA testing revealed that the DNA on the beer can and the hair samples was consistent with Eason's DNA profile. The probability that someone other than Eason was a contributor of the DNA profile found on the beer can was one in a number that exceeded the world's population.

On Medford's supplemental motion for DNA testing, the trial court entered a supplemental order directing that DNA testing also be conducted on hairs found on Medford's sweatpants and stains found on his shoes, sweatpants,

2

sweatshirt, and handkerchief, which had been taken from him at the jail after his arrest. The supplemental DNA testing showed that no DNA profile could be obtained from the hairs found on the sweatpants. But the testing showed that four of the five bloodstains on the sweatpants could be identified as consistent with Eason's DNA profile. Two of those were a mixture from Eason and a second, unknown contributor. Similarly, the three stains on the shoes were consistent with Eason's DNA profile. The probability that someone other than Eason was a contributor to the DNA profile on the shoes was one in a number that exceeded the world's population. The sweatshirt contained five bloodstains, three of which could be identified as consistent with Eason's DNA profile. One of those three was consistent with a mixture from Eason and a second, unknown contributor. The other two bloodstains on the sweatshirt were insufficient to yield a DNA profile. The stains on the handkerchief were consistent with Medford's DNA profile. The probability that someone other than Medford was a contributor to the DNA profile found on the handkerchief was one in a number that exceeded the world's population.

The State moved for a finding that the results were not favorable to Medford—it was not reasonably probable that Medford would not have been convicted if the DNA test results had been available during his trial. The trial court held a hearing and took judicial notice of the record from the underlying conviction. See Tex. R. Evid. 201. On February 13, 2015, the trial court found that the test results were not favorable to Medford—the DNA test results, if

3

available at Medford's trial, did not demonstrate a reasonable probability that he would not have been convicted. *See* Tex. Code Crim. Proc. Ann. art. 64.04 (West Supp. 2014); *Glover v. State*, 445 S.W.3d 858, 861 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see also* 43B George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 60:28 (3d ed. 2011) (noting a convicted person may appeal an article 64.04 finding if the trial court "determines that if the results of the testing had been available during trial, the convicted person would have been convicted"). Medford now appeals the trial court's order. *See* Tex. Code Crim. Proc. Ann. art. 64.05 (West 2006); *Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014).

## II. STANDARD AND SCOPE OF REVIEW

Our review of the trial court's finding under article 64.04 is de novo; however, we review subsidiary fact issues deferentially. *See Cate v. State*, 326 S.W.3d 388, 389 (Tex. App.—Amarillo 2010, pet. ref'd); *Frank v. State*, 190 S.W.3d 136, 138 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *cf. Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (stating similar standard applicable to review of trial court's denial of motion for DNA testing under article 64.03). We review the entire record—including the record from the underlying trial, as did the trial court—to determine if the DNA test results affirmatively cast doubt upon the validity of Medford's conviction to a reasonable probability. *See Cate*, 326 S.W.3d at 389; *Jacobs v. State*, 115 S.W.3d 108, 112 (Tex. App.—Texarkana 2003, pet. ref'd); *cf. Ex parte Gutierrez*, 337 S.W.3d 883, 893

4

(Tex. Crim. App. 2011) (holding "[t]he legislature has placed no barriers to the type of relevant and reliable information that the trial judge may consider when determining" a motion under article 64.03). *But see Asberry v. State*, No. 10-15-00032-CR, 2015 WL 5915953, at *1 (Tex. App.—Waco Oct. 8, 2015, no pet. h.) (mem. op., not designated for publication) (holding record from underlying trial could not be reviewed in article 64.04 hearing or in subsequent article 64.05 appeal because record was not properly authenticated and entered into evidence at the hearing). In other words, we are to determine if Medford has shown a 51% chance that he would not have been convicted had the results of the ordered DNA tests been available at trial. *See Glover*, 445 S.W.3d at 861–62 (quoting *Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005)); *see also Whitfield*, 430 S.W.3d at 407 & n.1 (recognizing trial court's "unfavorable findings" equated to finding under article 64.04 that there was no reasonable probability that defendant would not have been convicted had the results been available at his trial). "The burden of persuasion is on the convicted person." 43B Dix, *supra*, at § 60:26 (3d ed. 2011).

## III. APPLICATION

Medford and Eason, Medford's mother, lived together and had a tumultuous relationship. In fact, Medford previously had been arrested for a domestic-violence incident involving Eason. On May 27, 1995 at 7:00 a.m., Officer Jeffrey Whaylen was dispatched to Eason's home where an intoxicated Eason told Whaylen that she wanted Medford out of the house. Medford was not

5

at the home, and Whaylen told Eason to file a report at the police station when she was sober. At 9:10 a.m., Patrolman P.V. Caley was dispatched to Eason's house, where Eason complained that Medford had been calling her names. Caley talked to Medford and determined that Medford could stay after Eason "came to the conclusion that everything was fine." Caley drove back by Eason's house at 11:55 a.m. and noted that Medford's car was in the driveway.

At 1:00 p.m. Whaylen pulled Medford over for driving erratically and subsequently arrested him for public intoxication and driving without insurance. Medford had a red mark below his left eye when he was arrested. During one of Medford's multiple phone calls to his estranged wife from the jail, Medford told her to check on Eason and warned her she would not like what she saw. Medford's wife found Eason lying on the living-room floor covered in blood, with blunt-force injuries to her face, causing her eyes to be swollen shut. A large amount of blood was found in the kitchen as well, where it looked as if someone had tried to clean up with a towel. Eason told Medford's wife and the responding officer that she had fallen down while taking out the trash. When a paramedic later asked Eason if she had fallen or if someone had hit her, she admitted that "he" had hit her. Eason's injuries were not consistent with a fall and indicated that she had been hit multiple times with a hard object or had been pushed into a hard object. An officer who interviewed Medford at the jail after Eason was found

6

noticed that his clothes were stained with what appeared to be blood.[2] That officer took Medford's clothing "for possible DNA testing." Eason later died as a result of her head injuries.

Medford concedes that the blood on his clothing matched Eason's DNA profile, but he asserts that he "could have gotten these stains on his clothing in ways other than by assaulting" Eason because they lived together. A reasonable probability that the movant would not have been convicted requires that the DNA test results affirmatively cast doubt on the validity of the conviction. *See Glover*, 445 S.W.3d at 862. The evidence at trial we previously recited was sufficient to conclude that Medford attacked Eason, and the presence of Medford's and Eason's DNA profiles on the tested samples does not affirmatively cast doubt on the conviction. Indeed, the presence of Eason's blood on Medford's clothes when he was arrested inculpates Medford in Eason's assault. Medford's "could have" argument is insufficient to undermine confidence in the trial's outcome in light of the evidence supporting Medford's conviction. *See id.*; *Johnson v. State*, 183 S.W.3d 515, 520–21 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd, untimely filed); *Hicks v. State*, 151 S.W.3d 672, 675–76 (Tex. App.—Waco 2004, pet. ref'd); *cf. Gutierrez*, 337 S.W.3d at 892 (noting favorable DNA test result is one that affirmatively casts doubt on validity of conviction and does more than "muddy the waters" (quoting *Rivera v. State*, 89 S.W.3d at 59).

---

[2]Whaylen had not noticed any obvious stains on Medford's clothes when he arrested Medford.

## IV. CONCLUSION

We conclude that the trial court did not err when it found that Medford failed to establish that had the DNA test results been available at trial, there was a reasonable probability that he would not have been convicted. Thus, we overrule Medford's issue and affirm the trial court's order.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 12, 2015