**AFFIRMED and Opinion Filed July 26, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-01273-CR**

**ANTONIO RODRIGUEZ, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 331st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-DC-84-075577**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

This is an appeal of the trial court's finding that the results of post-conviction DNA testing were unfavorable to the appellant. *See* TEX. CODE CRIM. PROC. art. 64.05. We affirm the trial court's finding because appellant did not satisfy his article 64 burden to establish a reasonable probability that he would not have been convicted had the DNA results been available at trial.

### I. BACKGROUND

In 1985, appellant was convicted of aggravated sexual assault and sentenced to ninety-nine years imprisonment. The conviction was affirmed on appeal.

In 2010, appellant moved for post-conviction DNA testing and requested the appointment of counsel and the motion was granted. The sexual assault victim's DNA profile was the only profile the testing developed based on hair found in the trace evidence collection.

In 2015, appellant requested a hearing on the test results, arguing that none of the evidence tested linked him to the crime scene. The trial court held a hearing in 2018, and made findings of fact and conclusions of law, including a finding that it is reasonably probable that appellant would have been convicted had the DNA results obtained in the testing been available at trial. That finding forms the basis for this appeal.

## II. ANALYSIS

### A. Standard of Review and Applicable Law

To be entitled to post-conviction DNA testing, a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 64.03. One of those requirements is that "the convicted person establishes by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing." *Id*. 64.03(a)(2)(A). This means that a convicted person must show a greater than 50% chance that he would not have been convicted if exculpatory results from the requested DNA testing had been available at trial. *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017).

If the court orders testing, it must hold a hearing and make a finding as to whether, had the results been available at trial, it is "reasonably probable that the person would not have been convicted." *See* TEX. CODE CRIM. PROC. art. 64.04.

When reviewing the trial court's decision, we apply a bifurcated standard of review, affording almost total deference to a trial court's resolution of historical fact issues and mixed questions that turn on credibility and demeanor, but we review de novo mixed questions that do not turn on credibility and demeanor and questions of law. *Dunning v. State*, 572 S.W.3d 685, 692 (Tex. Crim. App. 2019). The ultimate question of whether a reasonable probability exists that a person would not have been convicted had the DNA results been available at trial is a question of

law that we review de novo. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). A trial court does not err by finding DNA test results unfavorable if the test results fail to demonstrate a reasonable probability that the test results would change the outcome at trial. *See id.*

**B.     The Evidence**

During the 1985 trial, the victim, CC, testified that appellant attacked her one night after she stopped at a grocery store to use a pay phone. After CC used the phone and returned to her car, appellant reached through the car window, strangled her, and pushed her to the passenger seat.

Appellant then drove CC's car for two to three minutes before pulling over to the side of the road. He removed CC's clothes, told her he had a knife, and threatened to kill her. Then, appellant put his penis in CC's vagina and bit her "all over."

In an effort to escape, CC convinced appellant to go to her apartment. When they reached the apartment, CC escaped, drove to a pay phone, and called the police.

A week later, CC saw appellant as she was driving down the street and recognized him immediately. She drove to a store and called the police. She also told a man at the store whom she knew that the person who had beaten and raped her was walking down the street, and the man offered to detain appellant. CC and the man then drove back down the street, and the man detained appellant until the police arrived.

CC identified appellant in court. A comparison of a fingerprint taken from the doorframe of her car showed the print to be appellant's. A small seminal stain was found on a towel in CC's car, but the sample was too small to be further analyzed or connected to a particular individual. CC identified the towel as one she kept in her car, but did not identify it as having any part in her sexual assault. In addition, a hair was identified in CC's pubic combing that a DPS chemist testified had characteristics consistent with appellant's hair.

The 2010 post-conviction DNA testing resulted in a partial profile obtained from hair found in a trace evidence collection of the towel, panties, and pantyhose collected from CC's car. Initially, the profile was described as consistent with an "unknown female," but on further analysis, the profile was deemed consistent with CC's DNA profile. The trial court noted these results in its findings and also found that no other DNA profiles were obtained from the evidence tested.

Appellant argues that the DNA testing (i) proves that the semen originally identified on the towel is not his and (ii) refutes "misleading hair comparison evidence" presented at trial. According to appellant, the trial court concluded that "the DNA testing conclusively proved that the hair and semen found at the scenes and later discussed at the original trial" are not appellant's. We are not persuaded by these arguments.

Significantly, appellant's hair comparison argument is based on the false premise that the hair discussed at trial was the same hair that was tested. It was not.

At trial, a DPS chemist testified that a hair found in CC's pubic combing was microscopically consistent with appellant's hair. No DNA profile was developed for this hair. The hair that was subsequently tested in 2010 was found in the trace evidence collection from the towel, panties, and pantyhose. This hair revealed a partial DNA profile consistent with CC's profile. The hair found in the trace evidence was not discussed by the chemist at trial. Thus, the record reflects that the hair that was examined and about which there was testimony at trial is not the same hair that later yielded CC's profile. Thus, contrary to appellant's assertion that "the testimony of [the chemist] has been scientifically and irrefutably proven to be untrue," the chemist's trial testimony is not impeached by the post-conviction DNA testing. A DNA test result identifying the victim's DNA does not compel a finding in appellant's favor because it does not make it more likely that the sexual assault did not take place or that appellant was not the attacker.

*See Ewere v. State*, No. 05-17-00125-CR, 2017 WL 5559585, at *3 (Tex. App.—Dallas Nov. 16, 2017, no pet.) (mem. op., not designated for publication).

Likewise, the absence of appellant's DNA on the towel does not compel a favorable finding. Appellant claims CC testified that she used the towel to clean herself immediately after the attack, but we find no record support for this assertion. Rather, the record reflects that CC testified that she kept the towel in her car to use when she washed the car.

A forensic analyst testified at trial that a small stain with identifiable spermatozoa had been found on the towel, but additional analysis was impossible because there was a "very small quantity." The State argued it was possible that appellant could have wiped himself on the towel. The defense argued that the sperm on the towel had no connection to the offense. Post-conviction, no DNA profile was obtained from the towel.

Appellant insists that the DNA testing proves that the semen originally identified on the towel is not his. But the absence of a defendant's DNA does not compel a trial court to issue a favorable finding. *See Rivera*, 89 S.W.3d at 60, n.20; *see also Glover v. State*, 445 S.W.3d 858, 862 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (DNA test results not in conflict with results on towel presented at trial). The inability to obtain a profile does not exclude appellant as the possible source of the sperm identified but not tested twenty nine years before. Both before and after the DNA testing, the information was the same; the perpetrator left behind no testable biological material.

Appellant's remaining arguments attempt to relitigate the admission, reliability, and credibility of the remaining evidence admitted at trial, including hair comparison evidence and eyewitness identification. These issues, however, are not relevant to the inquiry at hand. Indeed, "Chapter 64 is not an invitation to review every potential error in the underlying trial proceedings" and does not "confer jurisdiction on appellate courts to consider collateral attacks on the trial

court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles." *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd).

After carefully reviewing the record and after considering the probable impact that the DNA test results would have when combined with the incriminating evidence presented at trial, we cannot conclude there is a reasonable probability that appellant would not have been convicted had the DNA results been available in 1985. Therefore, we hold that the trial court did not err by finding that the test results were unfavorable to appellant and resolve his sole issue against him.

### III.  CONCLUSION

Having resolved appellant's sole issue against him, we affirm the trial court's August 25, 2018 finding on the results of the DNA testing.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
181273F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANTONIO RODRIGUEZ, JR., Appellant

No. 05-18-01273-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 331st District Court, Travis County, Texas

Trial Court Cause No. D-1-DC-84-075577.

Opinion delivered by Justice Whitehill.

Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the trial court's August 25, 2018 finding on the results of DNA testing is **AFFIRMED**.

Judgment entered July 26, 2019