

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00217-CR

_____

ROGER EUGENE FAIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1023944D

Before Gabriel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Roger Eugene Fain raises a single point challenging the no-reasonable-probability-of-non-conviction finding made by the trial court following post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. We will affirm.

### II. PROCEDURAL BACKGROUND

In 2007, a jury convicted Fain of the capital murder of Linda Donahew, and the trial court sentenced him to life imprisonment.[1] In part of our opinion affirming his conviction, this court held that the evidence was sufficient to support the jury's verdict.[2] *See Fain v. State*, No. 02–08–00002–CR, 2009 WL 2579580, *5 (Tex. App.—Fort Worth Aug. 20, 2009, pet. ref'd) (mem. op., not designated for publication). Following our opinion affirming the conviction, Fain filed his first motion for post-conviction forensic DNA testing, and in September 2010, the trial court denied that

---

[1]The State waived the death penalty before trial.

[2]At the time of Fain's direct appeal, this court was required to conduct both a legal sufficiency and factual sufficiency review. Since that time, the Texas Court of Criminal Appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard and that the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (*overruling Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).

motion. *See Fain v. State*, No. 02–10–00412–CR, 2012 WL 752652, at *6 (Tex. App.—Fort Worth Mar. 8, 2012, pet. ref'd) (mem. op., not designated for publication). In 2012, we upheld the denial of Fain's first request for DNA testing because he did not sustain his burden under the former law to show that he was blameless in the failure to perform the DNA tests before trial. *Id.*

In April 2013, Fain, acting pro se, filed his second motion for post-conviction DNA testing of items that "ha[d] not previously been tested." *Fain v. State*, 02-13-00366-CR, 2014 WL 6840282, at *5 (Tex. App.—Fort Worth Dec. 4, 2014, pet. ref'd) (mem. op., not designated for publication). Fain asked for testing of numerous items and contended, "There is untested biological material in the State's possession that may well contain the identity of the person(s) that are responsible but has never been subjected to DNA testing." *Id.* He also argued, "If DNA other than [Fain's] is detected, [then it] could corroborate the theory of someone else[']s involvement in this case . . . ." *Id.* In June 2013, the trial court denied the second motion. *Id.* Fain appealed. *Id.* This time, because the law had changed and Fain no longer bore the burden to show that he was blameless in the failure to perform the DNA tests before trial, we held that the trial court erred in part by denying Fain's second motion. *Id.* at *9. Particularly, we affirmed the trial court's order as to blood found on a ball-point pen and in a closet, but we reversed the order as to hairs in Donahew's hands, pubic hair, blood on a bathroom faucet, Donahew's fingernail clippings, male DNA discovered on the bra and shirt that Donahew had worn on the day of her death, and

3

knife.  *Id.*  Accordingly, we remanded this case to the trial court for further proceedings.  *Id.*

In accordance with that opinion, on June 14, 2015, the trial court ordered the Texas Department of Public Safety (DPS) to conduct forensic DNA testing on the items we addressed—except the knife, which was no longer in law-enforcement possession.  DPS issued three reports related to the testing.

First, on February 9, 2017, DPS issued a report finding that presumptive testing on Donahew's left and right fingernail clippings tested positive for the presence of blood, that presumptive testing on the stain from the crime scene tested negative for the presence of blood, and that swabs from Donahew's shirt and bra were collected for potential presence of DNA.  Moreover, the fingernail cuttings, the faucet stain, and the shirt and bra swabs were then sent for further DNA analysis.  The "pubic combing slides" were also sent for further DNA analysis.

Second, on March 30, 2018, the laboratory issued a report finding that a box marked "pubic combing slides" contained a single hair that was not suitable for nuclear DNA analysis because it had no root; that one hair from Donahew's pubic combing, three hairs from her right hand, and three hairs from her left hand had roots and were suitable for nuclear DNA analysis; and that one hair from Donahew's right hand and the remaining hairs from her left hand were not suitable for nuclear DNA analysis because they had no roots.  The suitable hairs were forwarded for further DNA analysis.

4

Third, on June 13, 2018, the laboratory issued a report finding that the partial DNA profile obtained from the left and right fingernail cuttings were consistent with Donahew's DNA profile; that there was insufficient data from the faucet stain for comparison purposes; that there was insufficient data from one pubic hair combing for comparison purposes; that no DNA profile was obtained from the hairs in Donahew's left and right hands; and that no DNA profile was obtained from the swabbing of Donahew's shirt and bra.

After the State filed a motion seeking a finding on the reasonable probability of non-conviction, and after Fain filed a response to that motion, the trial court conducted a live hearing on May 23, 2019. At the hearing, in addition to testifying to the results from the three reports summarized above, DNA analyst Clare Moyers testified that DPS had reinterpreted a 2005 report concerning DNA material from the oral swabs taken from Donahew's mouth for the DPS's CODIS laboratory in 2015. Moyers said that from the report on the testing, she identified nine of fifteen genetic markers or short tandem repeats (STR's) consistent with Fain's DNA profile, testifying that six of the STR's were inconclusive. However, original interpretation of the testing in 2005 of the oral swabs identified fifteen of fifteen STR's consistent with Fain's DNA profile. Moyers averred that the discrepancy between the two tests could be because the testing method used in 2005 was different than the testing method used in 2015. The record is not clear why DPS reinterpreted the results from the oral swabs. Indeed, neither Fain's request for testing nor the trial court's order permitting

the testing mentions reinterpreting the results from the oral swabs. And our opinion ordering the testing of untested evidence also did not order the reinterpretation of the 2005 results.

After the hearing, the trial court concluded that the testing results obtained by DPS did not create a reasonable probability that Fain would not have been convicted had they been available at the time of his trial. This appeal followed.

## III. FACTUAL BACKGROUND

Because the State argues that the results of the new testing and reinterpretation of the oral swabs do not cast affirmative doubt on the validity of Fain's conviction in light of other evidence introduced at Fain's murder trial, we recite many of the facts from that trial. The indictment alleged that Fain killed Donahew by strangling her with his hand or hands, or with an object unknown to the grand jury, or by stabbing her with a knife, or by a combination of the strangulation and stabbing, while committing or attempting to commit aggravated sexual assault. Our direct appeal opinion set out the following facts:[3]

> Bonnie Bishop shared a house with her sister, Donahew. On June 1, 1987, Bishop left work and arrived home at approximately 8:00 p.m. She entered the house to find her sister's nude and blood-covered body lying on the floor in a bedroom closet.

---

[3]This opinion cites only those facts pertinent to this appeal. These are the same facts set out in this court's opinion affirming the denial of Fain's first motion for post-conviction, forensic DNA testing. *See Fain*, 2012 WL 752652, at *1–3. A more complete recitation of the facts can be read in this court's opinion regarding Fain's direct appeal. *Fain*, 2009 WL 2579580, at *1–4.

6

The autopsy revealed that Donahew had died from manual strangulation and that a secondary cause of death was a stab wound to her neck. The postmortem examination also revealed several hairs found clinched in her hands, DNA artifacts in her mouth, and three foreign pubic hairs in the genital area.

Approximately fourteen years later, in August 2001, a DNA sample was taken from [Fain], who was incarcerated for an unrelated crime. The sample was entered into the Combined DNA Index System (CODIS) of [DPS]. Four years later, in October 2005, the cold case of Donahew's murder was reopened, and the DNA samples acquired during the examination of her body were uploaded into CODIS and were found to match the DNA profile of [Fain].

. . . .

Dr. Nizam Peerwani, the medical examiner who performed the autopsy and forensic examination of Donahew's body, testified that he took oral swabs from her mouth and that they contained DNA material. He testified that he was unable to determine exactly when the DNA had been deposited in her mouth. Kelly Solis testified that she was a DNA analyst for the DPS CODIS lab in Austin, Texas. She testified that the DNA samples from the oral swabs taken by Dr. Peerwani matched [Fain's] DNA profile.

Constance Patton testified that she was a senior forensic biologist and DNA technical leader for the medical examiner's office crime laboratory in Fort Worth. She testified that she had examined the samples from the oral swabs taken by Dr. Peerwani and that the results of her examination showed that the samples contained DNA material consistent with the DNA of Donahew and a mixture containing one DNA sample consistent with that of [Fain] and a sample of male DNA foreign to both Donahew and [Fain]. Patton testified that it could not be determined whether [Fain's] DNA had been contributed before or after the other male DNA or how long it had been present. She also testified that she had tested a portion of a towel taken from Donahew's house. The towel tested presumptively for blood and also for a mixture of DNA from Donahew. She testified that a sample of male DNA from Ronald Nix, a boyfriend of Donahew, could not be excluded from matching the sample on the towel. Patton also found a sperm stain on

7

the comforter from Donahew's bed, the DNA profile of which also matched Nix's sample.

Dr. Peerwani had found several hairs clutched in Donahew's hand during the postmortem examination. One of the hairs was identified as dog hair. Other hairs were consistent with either the hair of Donahew or that of her sister, Bishop. One hair, however, was not matched to Donahew, Bishop, or [Fain].

Susan Kenney testified that in 1987 she had been working as a serologist in the Fort Worth Police Department Crime Lab. She examined the evidence taken by Dr. Peerwani as part of the examination of Donahew's body. She testified that part of the protocol of the examination was to comb the pubic hair area of Donahew. In this case, the combing resulted in finding three hairs that were not similar to those of Donahew.

Detective Jim Ford testified that he had requested DNA testing of the unknown pubic hair found on Donahew's body. The test showed that Nix could not be eliminated as a contributor of the hair.

. . . .

Ernest Fain, [Fain's] brother, testified that in 1987, [Fain] drove a mid–1970s white Ford pickup truck and that the truck had a black tool box and PVC piping attached to its bed . . . .

Sheila Nelson testified that she lived next door to Donahew in 1987. On the day of Donahew's murder, Nelson and her husband left the house at approximately 5:15 p.m. to take a walk. They noticed a white Ford pickup truck parked on the street "not in front of my house and not in front of Linda's but kind of between the two." She testified that it was an older model truck with a tool box. The truck was still there when she returned from her walk about fifteen to twenty minutes later. She and her husband went out to eat, and when they returned at about 8:30 p.m., the pickup was gone. Nelson testified that Donahew had had a lot of friends and quite a bit of company.

. . . .

Michael Higham testified that in the late spring and summer of 1987, he was the detail shop manager of Pleasant Ridge Car Wash in Arlington. In the late spring or early summer of 1987, Donahew took her car in for detailing. When he had finished with the car, he went to the horse stables to pick her up and take her back to her car. She was with a man whom [Higham] identified as [Fain]. Higham drove both the man and Donahew back to pick up her car.

. . . .

Danny Smith, a sixty-three-year-old inmate who at the time of trial was serving forty-five years' confinement for involuntary manslaughter, enhanced to a habitual offense, testified that he knew [Fain] from having been in prison with him. In 2005, while they were housed in the same cell block of the Eastham Unit, [Fain] told him that Arlington detectives had visited him and had taken mouth swabs for DNA purposes. After the visit, [Fain] started "acting in an excited type of manner." [Fain] told Smith that he had been having sex with Donahew and had unintentionally strangled her during sex. Smith claimed that [Fain] told him that the strangulation was part of the sex act.

. . . .

Ronald Nix testified that he had dated Donahew from February 1987 until her death. In May 1987, he and Donahew had taken a vacation together to Mexico. . . . He also testified that he had seen Donahew on the Friday preceding her death. He testified that shortly before her death, he had been at a club with Donahew and had seen her talking with a man whom Nix identified as [Fain]. Nix testified that Donahew had given [Fain] her phone number. . . .

*Fain*, 2009 WL 2579580, at *1–4.

## IV. DISCUSSION

In one point, Fain argues that the trial court erred by finding that the results of the newest testing "do not create a reasonable probability that the defendant would not have been convicted had they been available during his trial." We disagree.

9

**A.      Standard of Review**

When reviewing a trial court's finding in a Chapter 64 post-conviction-DNA-test proceeding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted, we apply the same standard of review that applies to our review of a trial court's ruling granting or denying DNA testing under Article 64.03. *See* Tex. Code Crim. Proc. Ann. arts. 64.03, 64.04; *Asberry v. State*, 507 S.W.3d 227, 228–29 (Tex. Crim. App. 2016) (explaining that "we do not see any reason to treat a review of a ruling pursuant to Article 64.04 differently than a ruling pursuant to Article 64.03"). That is, we use the familiar bifurcated standard of review articulated in *Guzman v. State*—we give almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor, and we review de novo all other application-of-law-to-fact questions. 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

We review the entire record, that is, all of the evidence that was available to, and considered by, the trial court in making its ruling, including testimony from the original trial. *Asberry*, 507 S.W.3d at 228. The ultimate question of whether a reasonable probability exists that exculpatory DNA tests would have caused the appellant to not be convicted "is an application-of-the-law-to-fact question that does

10

not turn on credibility and demeanor and is therefore reviewed de novo." *See Rivera*, 89 S.W.3d at 59.

## B. The Law Concerning Findings on Post-Conviction DNA Testing

The purpose of post-conviction DNA testing is to provide a means through which a defendant may establish his innocence by excluding himself as the perpetrator of the offense of which he was convicted. *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007). Chapter 64 of the Code of Criminal Procedure provides that a convicted person may submit a motion to the convicting court to obtain post-conviction DNA testing. Tex. Code Crim. Proc. Ann. art. 64.01; *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). If such DNA testing is conducted, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted. Tex. Code Crim. Proc. Ann. art. 64.04; *see also Solomon v. State*, No. 02-13-00593-CR, 2015 WL 601877, at *4 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication). The defendant may appeal a trial court's finding that even if DNA testing results had been available during the trial of the offense, it is not reasonably probable that the person would not have been convicted. *See* Tex. Code Crim. Proc. Ann. art. 64.05; *Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014).

To be entitled to a finding that, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted,

"[t]he defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted." *Glover v. State*, 445 S.W.3d 858, 861 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Medford v. State*, No. 02-15-00055-CR, 2015 WL 7008030, at *3 (Tex. App.—Fort Worth Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication). A defendant is not required to establish actual innocence to be entitled to a favorable finding. *See Glover*, 445 S.W.3d at 862.

## C. The Trial Court's Not-Reasonably-Probable Finding

In this case, Fain argues that the lack of DNA evidence found on much of the newly tested evidence, the circumstantial nature of the evidence against him in his murder trial, and the reinterpretation of the oral swabs demonstrates that the trial court erred by finding that the newly obtained test results by DPS did not create a reasonable probability that he would not have been convicted had they been available at the time of his trial. We disagree.

Fain first argues that many of the newly tested items of evidence "failed to identify [him] as a possible contributor" because no DNA evidence was found at all, only Donahew's DNA was found, or the data was insufficient on the items tested. Specifically, Fain argues "that the results of the DNA testing did not conclusively show that he was the perpetrator of the crime and the fact that his DNA was not found on any of the samples analyzed could indicate that another person may have committed the crime." But as the State points out, the "absence of [Fain's] DNA

12

profile [on the newly-tested evidence] does not establish a reasonable probability of non-conviction even if its presence would have indicated guilt." *See Flores v. State*, 491 S.W.3d 6, 10 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Even if we were to infer from the results that another person was present at the time of the shooting, this inference alone 'would not factually exclude the appell[ant] from having killed [Hyatt]' and would not demonstrate a reasonable probability of acquittal."); *see also Jones v. State*, 01-03-00325-CR, 2004 WL 440430, at *2 (Tex. App.—Houston [1st Dist.] Mar. 11, 2004, pet. ref'd) (mem. op., not designated for publication) ("Thus, even if appellant's DNA were not found on the package of cigarettes or the cigarette lighter, or if someone else's DNA were found on either item, the DNA evidence would not provide a reasonable probability that appellant did not commit the robberies. The DNA evidence would 'merely muddy the waters.'") (quoting *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002)). The lack of DNA entirely or the lack of DNA from anyone other than Donahew on the newly tested items does not demonstrate a reasonable probability that Fain would not have been convicted had they been available at the time of his trial. *See Flores*, 491 S.W.3d at 10. These results do not exclude Fain as the perpetrator of the capital murder.

Fain next argues that, other than his identified DNA from Donahew's mouth, the remaining evidence of his guilt at his murder trial was "circumstantial" and therefore not indictive of his guilt. Specifically, Fain claims that the evidence that he had been seen with Donahew prior to her murder, that a truck matching his own

13

truck's description was seen outside her house on the day of her murder, and that his confession to Smith in prison that he had murdered Donahew accidently during a sex act is no evidence of his guilt. Fain cites no authority to support his contention that circumstantial evidence is somehow not indicative of guilt or to support his contention that lack of knowing the "circumstances of his conversation" with Smith are somehow exculpating. We conclude that there are at least two reasons to reject Fain's arguments. First, it is well known that "circumstantial evidence is as probative as direct evidence in establishing guilt." *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Thus, the circumstantial nature of the evidence against Fain does not demonstrate a reasonable probability that he would not have been convicted had the State's case been purely circumstantial. Second, Fain should have addressed any complaints that he had about any circumstantial evidence, including his confession, through his direct appeal—an appeal wherein this court held that the evidence was sufficient to support his conviction. *See Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd) ("[T]he jurisdiction afforded us under [C]hapter 64 does not extend to collateral attacks on the judgment of conviction or allow us to revisit matters that should have been addressed on direct appeal."); *see also Fain*, 2009 WL 2579580, *5 (holding that evidence supported jury's verdict that Fain murdered Donahew). We reject Fain's argument that the circumstantial nature of the evidence supporting his conviction is somehow not probative of his guilt.

14

Finally, Fain argues that the reduction in identifying STR markers between the initial 2005 interpretation of his genetic markers found on the oral swabs as being fifteen of fifteen versus the 2015 interpretation of his genetic markers as being only nine of fifteen "actually weakens" the State's argument that this evidence is indicative of his guilt. We disagree. First, Fain cites no authority to support this contention. Second, the 2015 results were merely inconclusive at six genetic loci, which did not mean that Fain's alleles were absent at these locations—it means only that their peaks did not meet the threshold for being included in calculating the combined possibilities of exclusion statistics. And third, as the State points out, the later interpretation would have only changed the exclusionary rate of Fain from all other Caucasian, Hispanic, or African-American males as the DNA's contributor from 99.999% to 99.919%. This change is not significant evidence enough to conclude that Fain would not have been convicted had the later interpretation of these results been available at trial. *See Booker v. State*, 155 S.W.3d 259, 266–67 (Tex. App.—Dallas 2004, no pet.) ("[T]he fact that only six of the fourteen loci yielded a result of not excluding appellant does not demonstrate a reasonable probability of innocence."). We overrule Fain's sole point on appeal.

## V. FAIN'S MOTION TO SUBSTITUTE COUNSEL

In addition to his appeal, Fain has filed a motion in this court titled, "APPELLANT'S REQUEST TO ABATE HIS APPEAL AND REQUEST APPOINTMENT OF SUBSTITUTE COUSNEL." We deny this motion.

## VI. Conclusion

Having overruled Fain's sole point on appeal and having denied his request to abate to the trial court for the appointment of substitute counsel, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 19, 2019