**Opinion issued October 19, 2021**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-20-00175-CR

—————————————

**EARNEST JAMES DUDLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 208th District Court
Harris County, Texas
Trial Court Case No. 917568

## MEMORANDUM OPINION

This is an appeal of the trial court's finding that the results of post-conviction DNA testing were unfavorable to appellant, Earnest James Dudley. *See* TEX. CODE. CRIM. PROC. art. 64.05. In his sole issue on appeal, appellant contends that the trial court erred in finding that the DNA results were unfavorable because he established

that, had the results been available at trial, there was a reasonable probability that he would not have been convicted. We affirm.

## BACKGROUND

In 2003, a jury found appellant guilty of aggravated sexual assault and assessed his punishment at confinement for life. *See Dudley v. State*, 01-03-00528-CR, 2004 WL 584919 (Tex. App.—Houston [1st Dist.] Mar. 25, 2004, pet. ref'd) (mem op., not designated for publication). This Court affirmed appellant's conviction, and the Texas Court of Criminal Appeals denied appellant's petition for discretionary review. *Id.*

### *Evidence in the 2003 Conviction*

The facts of the underlying case, as set forth in this Court's 2004 opinion are as follows:

> The complainant, who was 17 years-old at the time of the offense, testified that, at approximately 10:00 p.m. on July 11, 2002, she rode a Metro bus from her boyfriend's house to her home in Houston. She explained that she had missed a bus that would have taken her near her home and had to take a bus that dropped her off approximately one and one-half miles from her home. As the complainant began walking home, appellant drove his car up to the bus stop, honked his car horn three times, and offered to give her a ride home. She accepted appellant's offer and got into his car.

> The complainant gave appellant directions to her home, and he followed them. However, when they were within sight of her home, appellant turned left at the intersection before her home and stated that "he had to pick up some weed from a friend." Appellant then drove a few blocks to another intersection and parked his car. When the complainant attempted to get out of the car, appellant locked the doors.

2

Appellant then pulled out a pocketknife, placed it against the complainant's neck, and told her that if she did not perform oral sex on him "he was going to stab the shit out of her." Appellant then pulled his pants down, pushed the complainant's head between his legs, and forced her to perform oral sex.

After a short time, appellant "let [the complainant] up" and then told her that he was going to have intercourse with her. However, at this point, a police officer, in a patrol car, drove up to the intersection, and appellant began to "panic." He told the complainant to tell the officer that he was her cousin and that he was giving her a ride home. Appellant then started his car and attempted to drive away. However, the officer pulled his patrol car in behind appellant's car and initiated a traffic stop. When the police officer walked up to appellant's car, he asked the complainant if "everything [was] okay." The complainant replied "yes," but shook her head to indicate "no." The officer then asked the complainant to get out of appellant's car, and, after she got out, the complainant told the officer that appellant had sexually assaulted her. Appellant stated, "she's lying, she's lying . . . I can't go back to jail this time."

Houston Police Officer E. Speckman testified that, after he initiated the traffic stop of appellant's car, the complainant told him that appellant had a knife and he had tried to sexually assault her. Appellant told Speckman that the complainant was a prostitute and that he had agreed to pay her $20 to perform oral sex on him. When Speckman asked appellant where the $20 was located, appellant stated that he did not have any money and he was planning on "ripping off" the complainant. Speckman then asked appellant if he had a knife either on him or in his car, but appellant denied having a knife. However, when Speckman shone his flashlight inside appellant's car, he saw an open pocketknife on the floorboard near the console. Thereafter, Speckman contacted a female officer, Houston Police Officer H. Holt, and asked her to come to the scene to speak with the complainant.

Officer Holt testified that, when she arrived at the scene, she saw that the complainant was very emotional and was "visibly shaken." The complainant told Holt that appellant had offered to give her a ride home, but had refused to take her straight home. Instead, appellant drove to

the intersection, threatened the complainant with a pocketknife, and forced her to perform oral sex on him.

Roshonda Baker, appellant's girlfriend, testified that, at some point after his arrest, she retrieved appellant's car from storage and found $20 in the car's ashtray.

*Dudley*, 2004 WL 584919, at *1–2.

### *Chapter 64 Proceedings*

In 2014, appellant requested, and the trial court appointed, counsel to represent him for the purpose of post-conviction DNA testing. *See* TEX. CODE CRIM. PROC. art. 64.01(c). In 2017, the case was transferred to the 208th District Court because the judge of the trial court to which the case was previously assigned had been the trial prosecutor in appellant's case. On March 2, 2017, the judge of the 208th District Court signed an Agreed Order for DNA testing, pursuant to article 64.03 of the Texas Code of Criminal Procedure. The Agreed Order required the Department of Public Safety ("DPS") Crime Lab to conduct forensic testing of the following items: (1) a SX 10—one Prima knife with brown handle, (2) the complainant's sexual assault kit, and (3) several clothing items.

The DPS Crime Lab results relevant to this appeal were as follows: (1) insufficient male DNA from the complainant's oral swab, (2) no DNA on the knife, (3) DNA on the complainant's vaginal swabs that matched her boyfriend, but not appellant, (4) no sperm on the complainant's underwear, (5) male DNA on the complainant's underwear that excluded appellant.

4

Based on these results, the trial court entered the following findings:

> The Court finds that the defendant has failed to establish a reasonable probability that, had the results of this forensic DNA testing been available before or during the trial of the instant offense, the defendant would not have been prosecuted or convicted

> The Court finds that, when weighed against the evidence, the results of the forensic DNA testing conducted pursuant to its order are not favorable to the defendant.

Appellant appeals these negative findings. *See id.* art. 64.05.

## PROPRIETY OF POST-CONVICTION-TESTING FINDINGS

In his sole issue, appellant contends that "the trial court committed reversible error in denying appellant relief, where the evidence shows that had the results of the forensic testing of DNA biological materials been available during appellant's criminal prosecution, it is reasonably probable appellant would not have been convicted."

### *Applicable Law*

The purpose of postconviction DNA testing is to provide a means through which a defendant may establish his innocence by excluding himself as the perpetrator of the offense of which he was convicted. *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007). Chapter 64 of the Code of Criminal Procedure provides that a convicted person may submit a motion to the convicting court to obtain postconviction DNA testing. TEX. CODE CRIM. PROC. art. 64.01; *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). If such DNA testing

5

is conducted, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted. TEX. CODE CRIM. PROC. 64.04; *Solomon v. State*, No. 02-13-00593-CR, 2015 WL 601877, at *4 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication); *Glover v. State*, 445 S.W.3d 858, 861 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). The defendant may appeal that finding. *See* TEX. CODE CRIM. PROC. art. 64.05; *Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014).

To be entitled to a finding that, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted, "[t]he defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted." *Glover*, 445 S.W.3d at 861; *Medford v. State*, No. 02-15-00055-CR, 2015 WL 7008030, at *3 (Tex. App.—Fort Worth Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication). A defendant is not required to establish actual innocence to be entitled to a favorable finding. *See Glover*, 445 S.W.3d at 862.

***Standard of Review***

We review the trial court's decision regarding DNA testing using a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total deference to the trial court's determination of historical fact and

application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues. *Id.*

We review the entire record, that is, all the evidence that was available to, and considered by, the trial court in making its ruling, including testimony from the original trial. *Asberry v. State*, 507 S.W.3d 227, 228-29 (Tex. Crim. App. 2016). The ultimate question of whether a reasonable probability exists that exculpatory DNA tests would have caused the defendant to not be convicted "is an application-of-the-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed de novo." *See Rivera*, 89 S.W.3d at 59.

*Analysis*

Appellant argues that the trial court's findings are erroneous because "[a]ppellant's DNA was not found on materials where, under the State's theory of the case, it should have been present" and "[m]ale DNA not belonging to appellant was found on evidence where, under the State's theory of the case it should have been present." Specifically, appellant points out that his DNA was not present on the knife[1] or the complainant's oral swab, and that another person's DNA was present on the complainant's vaginal swab and underwear, but his DNA was not.

Regarding the absence of appellant's DNA on the knife and the insufficient male DNA on the complainant's oral swab, we note that neither DNA evidence nor

---

[1] In fact, no DNA at all was found on the knife.

physical evidence is required to support a sexual-assault conviction. *See Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("The absence of DNA or fingerprint evidence at trial does not render the other evidence insufficient to support the conviction."); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also* TEX. CODE CRIM. PROC. art. 38.07 (providing that complainant's testimony sufficient to support conviction).

In this case, there was sufficient evidence tying appellant to the sexual assault without any DNA evidence. The complainant positively identified appellant as her assailant, testified that he compelled her to perform oral sex at knife point, and an open knife was recovered from the floorboard of appellant's car immediately after he denied possessing a knife.

And, the absence of appellant's DNA on the knife and the complainant's oral swab does not establish a reasonably probability of non-conviction. *See Flores v. State*, 491 S.W.3d 6, 10 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Even if we were to infer from the results that another person was present at the time of the shooting, this inference alone 'would not factually exclude the appell[ant] from having killed [the complainant]' and would not demonstrate a reasonable probability of acquittal."); *see also Jones v. State*, 01-03-00325-CR, 2004 WL 440430, at *2 (Tex. App.—Houston [1st Dist.] Mar. 11, 2004, pet. ref'd) (mem. op., not designated

for publication) ("Thus, even if appellant's DNA were not found on the package of cigarettes or the cigarette lighter, or if someone else's DNA were found on either item, the DNA evidence would not provide a reasonable probability that appellant did not commit the robberies. The DNA evidence would 'merely muddy the waters.'") (quoting *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002)); *see also Rivera*, 89 S.W.3d at 60 (holding that "[w]hile the presence of the child's DNA under appellant's fingernails could indicate guilt, the absence of such DNA would not indicate innocence"). The lack of DNA on the knife or the complainant's oral swab does not demonstrate a reasonable probability that appellant would not have been convicted had such evidence been available at the time of his trial. *See Flores*, 491 S.W.3d at 10; *see also Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019) ("While Appellant is excluded as a major contributor to the tested items, that in and of itself, is insufficient to meet his burden under Article 64.04").

Similarly, the presence of someone else's DNA on the complainant's underwear and vaginal swabs does not establish a reasonably probability of non-conviction. The complaint testified that her boyfriend was named "Terry" and that she was on her way home from his apartment when she was sexually assaulted by appellant. The DNA profile from the complainant's vaginal swab matched one Terry Lee Davis. However, appellant was charged with and convicted of an aggravated

sexual assault alleging that "appellant, while using or exhibiting a deadly weapon, intentionally or knowingly caused his penis to penetrate the complainant's mouth, without her consent." *See Dudley*, 2004 WL 584919, at *3. That Terry Davis's DNA was present on the complainant's vaginal swab and underwear and that appellant's DNA was not present are irrelevant to whether appellant forced the complainant to perform oral sex for which he was charged and convicted. At best, such evidence at trial would have merely "muddied the waters," and appellant has not shown that, had the results been available during the trial of the offense, it is reasonably probable that he would not have been convicted.

We overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's order finding that the results of appellant's post-conviction were unfavorable.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Rivas-Molloy and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).

10