Larry FLORES, Appellant

v.

The STATE of Texas, Appellee

NO. 14–15–00092–CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed March 8, 2016

Discretionary Review Refused
June 15, 2016

Randall J. Ayers, Houston, TX, for Appellant.

Dan McCrory, Houston, TX, for State.

## OPINION

Marc W. Brown, Justice

Larry Flores appeals from the trial court's order finding that the results of the forensic DNA testing ordered under Chapter 64 of the Code of Criminal Procedure were not favorable to him. Upon review of the record[1] before us, we affirm the trial court's order.

1. Neither party provided this court with the reporter's record from the trial that resulted in appellant's conviction for capital murder. The record in this case does indicate, however, that the trial court considered the reporter's record in the Chapter 64 proceeding, as the court's findings cite extensively from that record. On the record before us on this appeal, then, we conclude that the trial court took judicial notice of the reporter's record when it considered appellant's Chapter 64 motion. *See Ex parte Okonkwo*, No. 14–14–00835–CR, 2015 WL 5092433, at *1 n. 1 (Tex.App.—Houston [14th Dist.] Aug. 27, 2015, pet. ref'd) (mem.op.). The reporter's record is in this court's files in Cause No. 14–97–1350–CR, appellant's direct appeal of his conviction, which is a related proceeding involving the same or nearly the same parties as appellant's present Chapter 64 appeal. Under these particular circumstances, on our own motion, we take judicial notice of the

### Factual and Procedural Background

In 1997, appellant Larry Flores was convicted of capital murder[2] in the deaths of complainants Tonya Hyatt and Joe Joseph. The conviction was affirmed on direct appeal in 2000. *Flores v. State*, No. 14–97–1350–CR, 2000 WL 177690 (Tex.App.—Houston [14th Dist.] Feb. 17, 2000, pet. ref'd) (mem. op., not designated for publication). In 2011, appellant filed a motion for post-conviction DNA testing pursuant to Texas Code of Criminal Procedure article 64.01, which allowed a convicted person to move for forensic DNA testing of evidence containing biological material that was either not previously subject to DNA testing or, if it was previously tested, could be subjected to newer testing techniques that "provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Act of April 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Law 4 (amended 2015) (current version at Tex.Code Crim. Proc. art. 64.01 (West 2015)). The trial court granted appellant's motion and ordered forensic DNA analysis of a pillow and shotgun shells found at the scene of the murder.

The record indicates that on the night of January 8, 1997, appellant and codefendants Manuel Martinez and Billy Bearden went to a Motel 6 in Harris County to meet complainants under the guise of a drug deal. In fact, appellant and his codefendants intended to "rip off" complainants and take their money without providing any drugs in return. After the money was taken, Hyatt and Joseph were shot and killed in a motel room. Martinez testified that when appellant entered the motel room, Martinez was armed with a Tec–9; Bearden was armed with a sawed-off shotgun; and appellant was armed with a 9 mm semi-automatic firearm. Martinez left the room briefly and returned to find Bearden now holding the 9 mm semi-automatic firearm and appellant holding the sawed-off shotgun. Martinez testified that he again left the room in order to transport the stolen money to the car. While he was outside, he heard gunshots and saw flashes of light coming from inside the room he had just left. Martinez testified that he did not know who had shot whom. The evidence at trial—autopsy reports and testimony from a medical examiner—indicated that Joseph was shot in the head with a shotgun and that Hyatt was shot in the neck and the head with a 9 mm semi-automatic firearm. It was believed that at least one of the gunshots inflicted on Hyatt traveled through a pillow that was found at the scene. The pillow had what appeared to be a bullet hole ripped through it as well as gunshot residue on the pillowcase. It is this pillow that the trial court ordered to be tested.

On the trial court's order, the Texas Department of Public Safety Crime Laboratory performed a forensic analysis on the pillow and some of the shotgun shells found at the scene. No DNA profile was developed from these shotgun shells. A tapelift of the pillowcase indicated the presence of dirt and debris, miscellaneous fibers, animal hairs, body hairs and body hair fragments, and head hair. The lab was able to obtain a partial DNA profile from the pillowcase, which testing indicated was actually a mixture of DNA profiles. The results of the test ultimately excluded appellant and both complainants as con-

reporter's record upon which the trial court relied in making its findings and conclusions pursuant to Chapter 64.

2. Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Law 3613 (amended 2011) (current version at Tex. Penal Code § 19.03(a)(2) (West 2015)).

tributors to the DNA mixture found on the pillow. After a hearing on these results, the trial court issued an order ruling that appellant failed to establish a reasonable probability that, had the results of this forensic DNA testing been available during his trial, appellant would not have been convicted. The court further concluded "that, while the results of the forensic DNA testing conducted pursuant to its order *appear* to be favorable to the defendant, when weighed against the evidence admitted at trial against the defendant, the results are, in fact, not favorable."[3]

## Analysis

Once the trial court has ordered DNA testing pursuant to Texas Code of Criminal Procedure chapter 64, the court "shall ... make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." Act of May 9, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Law 16 (amended 2011) (current version at Tex.Code Crim. Proc. art. 64.04 (West 2015)). Previously, this court held that in order to demonstrate a reasonable probability that he would not have been convicted, a convicted person must show a reasonable probability that he is innocent. *Johnson v. State*, 183 S.W.3d 515, 520 (Tex.App.—Houston [14th Dist.] 2006, pet. dism'd). Due to intervening statutory amendments[4] and develop-

ments in case law, this is no longer the operative standard.

■ This court's opinion in *Johnson* frames the "reasonable probability" finding required in article 64.04 in terms of "innocence," which has an independent legal meaning in Texas jurisprudence. A court considering whether DNA test results demonstrate a reasonable probability of acquittal should not apply the actual innocence standard articulated in *Ex parte Elizondo*, 947 S.W.2d 202 (Tex.Crim.App. 1996). Instead, the court should determine whether the results would "cast affirmative doubt upon the validity of the inmate's conviction." *Raby v. State*, No. AP–76,970, 2015 WL 1874540 at *5–*6 (Tex.Crim.App. April 22, 2015) (distinguishing the reasonable probability finding from the actual innocence inquiry); *Glover v. State*, 445 S.W.3d 858, 862 (Tex.App.—Houston [1st Dist.] 2014, pet. ref'd). To the extent that the *Johnson* opinion was framed in terms of actual innocence, we conclude that it should no longer be used in Chapter 64 cases to determine whether there is a reasonable probability that the inmate would not have been convicted.

Appellant argues that test results excluding him as a contributor to the DNA profile on the pillow through which Tonya Hyatt may have been shot could have cast doubt on his conviction, changing the out-

---

**3.** When Chapter 64 was first introduced in 2001, article 64.04 required the trial court to "make a finding as to whether the results [were] favorable to the convicted person." Act of April 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Law 4, *amended* by Act of May 9, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Law 16. The version of the statute in effect at the time that appellant filed his motion for testing does not frame the finding in terms of favorability; it only requires that the court make a finding as to whether it is reasonably probable that appellant would not have been convicted if the test

results had been available at trial. Act of May 9, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Law 16 (current version at Tex. Code Crim. Proc. art. 64.04 (West 2015)).

**4.** The 2003 amendment to the statute deleted the word "prosecuted," leaving the court to determine only whether the person would have been convicted had the forensic evidence been available during trial. Act of May 9, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Law 16 (current version at Tex.Code Crim. Proc. art. 64.04 (West 2015)).

come of his trial in one of three ways: (1) the results could have implicated another actor in the killings; (2) the results could have changed trial counsel's defensive theory; or (3) the results could have mitigated appellant's involvement in the killings. We address each of these arguments in turn and review the trial court's finding that the DNA test results were unfavorable to appellant under a bifurcated standard. *Johnson*, 183 S.W.3d at 519. We afford "almost total deference to the court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App.2002).

Appellant first argues that the test results would have changed the outcome of the trial because the results could have provided a positive identification of the person who actually shot Tonya Hyatt—perhaps Bearden, Martinez, or another unknown person. This argument fails for multiple reasons. Initially we note that there was no positive DNA identification made from this test; the analysis only excluded certain individuals as contributors to a DNA profile on one part of the pillowcase. Far from suggesting that appellant would have been acquitted, these results serve only to "muddy the waters." *Glover*, 445 S.W.3d at 862. Even if we were to infer from the results that another person was present at the time of the shooting, this inference alone "would not factually exclude the appell[ant] from having killed [Hyatt]" and would not demonstrate a reasonable probability of acquittal. *State v. Swearingen*, 424 S.W.3d 32, 38–39 (Tex.Crim.App.2014).

Further, the record does not indicate that appellant's conviction turned on an allegation that he shot Hyatt through the pillow—or that he shot Hyatt at all. The State's case rested mostly on appellant's role as the ringleader of the initial robbery, not as the actual shooter in either murder. Consistent with this theory of the crime, the jury was given the option of finding appellant guilty as either a principal or a party to the murders of Hyatt and Joseph. Even if the test results suggested that appellant did not actually shoot Hyatt, it is likely that he would still have been convicted—at least as a party to either murder—given the evidence adduced at trial that he planned the robbery and was present as the crime progressed. Additionally, the State did not allege at trial that appellant had shot Hyatt through the pillow. In fact, the State elicited testimony from Martinez that it was Bearden—not appellant—who "rushed" Hyatt with the 9 mm wrapped in a pillow. Even if Bearden had been identified as a contributor to the DNA profile on the pillow, the results would only confirm what was presented at trial—that Bearden was holding the pillow at some point in time. Despite hearing this evidence, the jury still convicted appellant of capital murder. It is not reasonably probable that the jury would have returned a different verdict if confronted with the test results from the pillow.

Likewise, appellant's second argument does not, in any appreciable way, further a claim that the jury would not have convicted appellant had the test results been available. It is an all-but-foregone conclusion that the availability of exculpatory evidence at trial would change a defense lawyer's strategy. However, as discussed previously, the post-conviction test results in this case are not exculpatory. *Id.* Further, appellant's argument places an improper focus on a variable that is difficult for a reviewing court to predict. While there is a certain amount of speculation necessary to determine whether the

jury would have reached a different verdict, that exercise is at least grounded in a comparison of readily ascertainable facts. In contrast, it is difficult to speculate whether, assuming he was competent and effective, defense counsel would have changed his theory of the case. That speculation is also too attenuated from the question that the court is obligated by statute to answer—whether a jury considering the results of new testing would return a verdict of not guilty. We reject appellant's second argument.

■ Appellant's third argument merely echoes what defense counsel argued at trial—that appellant did not intend to commit a murder. The trial court found that "the defense theory of the case was that the defendant was present at the time of the offense and intended to commit an aggravated robbery, but did not intend to kill nor kill anyone." In his brief, appellant suggests that the new test results could serve "to mitigate his involvement as a party to the shooting of Tonya Hyatt." Appellant does not suggest that he is innocent, nor does he acknowledge that a guilty verdict would have still been rendered even if the jury found that he was a party to and not a principal in Tonya Hyatt's murder. The jury charge instructed the jury to find appellant guilty if he directly caused the death of either Joe Joseph or Tonya Hyatt or if he was criminally responsible as a party in either death. Appellant's guilt as a party cannot be "mitigated," as he suggests on appeal, so long as he acted with intent to promote or assist in the murder of either Hyatt or Joseph and solicited, encouraged, directed, aided, or attempted to aid another person in committing either murder. Tex. Penal Code § 7.02(a)(2) (West 2015). Even if appellant could show that the test results tended to suggest that he was a mere party to the murders and not a principal,

the verdict would have still been the same—guilty. Under these circumstances, appellant cannot demonstrate a reasonable probability that he would not have been convicted had these test results been available and presented to the jury at trial.

Finally, even if we were to assume that the test results cast some amount of doubt on appellant's conviction, we are not persuaded that such minimal doubt overcomes the evidence of appellant's guilt. The evidence at trial showed that: appellant planned the robbery resulting in the murder; entered the motel room with weapons; most likely remained in the hotel room during the time that complainants were shot and killed; was armed with at least one of the weapons used in the murders; fled to San Antonio after the murders; and met with the co-defendants to formulate an alibi. The test results in this case do not independently support an argument that appellant would not have been convicted, and, when weighed against the incriminating evidence adduced at trial, do little to "undermine confidence in the outcome" of appellant's trial. *Johnson,* 183 S.W.3d at 520. Appellant has not demonstrated a reasonable probability that he would not have been convicted if the test results had previously been available.

## Conclusion

We affirm the trial court's order.