

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00083-CR

_____

GERALD SHERARD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1102114R

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

This is an appeal from a finding of no reasonable probability of nonconviction following the results of postconviction forensic DNA testing. Appellant Gerald Sherard complains on appeal that (1) the trial court did not hold a hearing upon completion of DNA testing in 2014, (2) the State withheld exculpatory evidence, and (3) the trial court's "no reasonable probability of nonconviction" finding was erroneous. We affirm.

**BACKGROUND**

Sherard was indicted for the offense of sexual assault by contact of a child under the age of seventeen, alleged to have been committed in October 2006.[1] *See* Tex. Penal Code Ann. § 22.011(a)(2)(C). In December 2006, he signed a handwritten statement describing the offense and, at some point, he also gave a videotaped confession. He later signed a judicial confession, entered a guilty plea, and was sentenced to fifteen years' confinement pursuant to a plea bargain agreement.

In April 2013, Sherard sent a handwritten letter to the trial court requesting DNA testing. The court granted that request and ordered the Texas Department of Public Safety Crime Laboratory ("Crime Lab") to conduct postconviction DNA testing on the victim's sealed sexual assault kit. The order required the Crime Lab to

---

[1]The indictment contained a second count that was not the basis of Sherard's conviction and is not at issue in this appeal.

immediately provide the court, the Tarrant County District Attorney's Office, and Sherard with the written results of all testing.

On May 22, 2014, the Crime Lab issued a forensic biology laboratory report stating that (1) a presumptive test for the presence of semen on the victim's vaginal swabs was negative, (2) semen specific constituents, but not spermatozoa, were detected on a vaginal smear slide, and (3) a presumptive test for the presence of semen on the victim's left neck swabs was negative. This report was addressed to the District Attorney's Office but it does not reflect that it was sent either to the trial court or to Sherard.

The Crime Lab also issued a DNA laboratory report on May 22, 2014, but that report is not in our record, presumably because it was amended on June 27, 2014. The June 2014 amended DNA laboratory report stated:

> The DNA profile [from the left neck swabs] is consistent with a mixture from an unknown male and an additional contributor. Due to the low level of data above our analytical threshold, no comparisons will be made to the additional contributor. Gerald Sherard is excluded as a contributor to this profile.

This report, like the May 2014 report, was addressed only to the District Attorney's Office.

In November 2015, the Tarrant County District Attorney informed Sherard by letter that the Texas Forensic Science Commission was "reviewing certain DNA mixture interpretation protocols relating to a common statistical method used by

3

Texas laboratories for the interpretation of DNA test results," and that Sherard's case "may *potentially* be impacted by the results of [that] review."

In August 2019, the Crime Lab issued a supplemental DNA laboratory report "to communicate results of data re-interpretation on previously reported DNA data using current guidelines." This supplemental report stated:

> The DNA profile from [the left neck swabs] is interpreted as a mixture of three individuals with the victim as an assumed contributor. Based on the likelihood ratio result, it is inconclusive whether or not Gerald Sherard is a contributor to this profile.

Again, the report was addressed only to the District Attorney's Office.

Following receipt of the August 2019 report, the State filed a motion requesting a "no reasonable probability of nonconviction" finding on the results of the postconviction DNA testing. The trial court conducted a hearing on that motion on November 13, 2019.

Sherard testified at the hearing that he had undergone hernia surgery a week or two before he entered his guilty plea and that he was still taking pain medication when he entered that plea. He stated that the medication caused him to be sleepy and that he did not recall signing anything at that time. Sherard also asserted that he had been pressured into pleading guilty. He acknowledged, though, that he did not tell his attorney at the time of his plea either that he was taking medication or that he felt pressured to plead guilty.

4

Melissa Haas, a DNA supervisor with the Crime Lab, explained that the May 2014 report was an initial biological screening for the presence of biological fluids. The June 2014 report, on the other hand, addressed DNA testing results. Haas also explained that the August 2019 report was the result of a reinterpretation of DNA samples performed because the Crime Lab had instituted new mixture interpretation protocols. The reinterpretation captured more data and resulted in the discovery of a "trace third contributor in the profile [from the left neck swabs] that was not seen in the original testing." An analysis comparing Sherard's DNA was inconclusive, meaning that he could neither be included nor excluded as a contributor.

The State filed a post-hearing motion again requesting a finding of no reasonable probability of nonconviction; Sherard filed a post-hearing motion requesting the opposite finding.

On March 31, 2020, the trial court entered a written finding that the forensic DNA testing did not "create a reasonable probability that the defendant would not have been convicted had its results been available during his trial." That written finding was rescinded and a new, substantively identical finding was entered on April 22, 2020, because neither party had received notice of the court's original finding.

## DISCUSSION

### Chapter 64 Forensic DNA Testing

Chapter 64 of the Texas Code of Criminal Procedure provides that "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." Tex. Code Crim. Proc. Ann. art. 64.01(a-1). Even a person who has entered a guilty plea or made a confession of guilt may submit such a motion, and the convicting court may not deny the request for DNA testing solely on the basis of such a plea or confession. *See id.* art. 64.03(b).

After examining the DNA test results, "the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." *Id.* art. 64.04.

### Article 64.04 Hearing

Article 64.04 requires the trial court to hold a live hearing after it examines DNA test results and before it makes a finding on the effect of those results. *See id.*; *see also Jones v. State*, 161 S.W.3d 685, 690 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that failure to conduct a live hearing is error). The trial court in this case held an Article 64.04 hearing in November 2019. Sherard contends, though, that the court erred by failing to hold a hearing years earlier. Specifically, in his first point, he

6

argues that the court was required to hold a hearing upon the issuance of the Crime Lab's June 2014 forensic DNA report.

The State responds that Article 64.04 does not include any deadline by which a trial court must conduct its hearing and that, even in ideal situations, the court and the parties require time to evaluate the test results in conjunction with all other evidence in the case. The State then lists four "unusual circumstances" that it contends explain and excuse the delay in this case. The record does not reflect some of these circumstances and does not show that the others were the actual cause of the delay in holding the Article 64.04 hearing.[2]

In any event, we need not determine whether the trial court erred by not holding a hearing closer in time to the issuance of the June 2014 report because any such error was not harmful. The asserted error is not constitutional and we therefore must disregard it if it does not affect Sherard's substantial rights. *See* Tex. R. App. P. 44.2(b); *Jones*, 161 S.W.3d at 690. In making this assessment, we "consider everything in the record including the character of the error and its relationship to other evidence." *Jones*, 161 S.W.3d at 690; *see Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

---

[2]Specifically, the record does not show that the trial court did not immediately receive the June 2014 report or that the Crime Lab withdrew that report pending reinterpretation. It also does not show that the Texas Forensic Science Commission's review of certain DNA mixture protocols (which apparently began in late 2015) or the Crime Lab's implementation of probabilistic genotyping software caused the delay in holding the hearing.

Sherard contends that his substantial rights were adversely affected in the following respects:

- he was not provided an opportunity to be present and object to any perceived error in the proceedings;

- he was not able to have his own expert appointed to review the DNA test results and to testify at the hearing; and

- he was deprived of the opportunity to present the June 2014 report—which stated that he was excluded as a contributor to the DNA profile from the left neck swabs—to the trial court.

The record refutes each of these contentions. Sherard was present and represented by counsel at the November 2019 Article 64.04 hearing. He clearly had advance notice of that hearing as he was bench-warranted to appear and testify, he and the State had agreed beforehand to the admission of the three Crime Lab reports as exhibits, and he had arranged to call Haas as a witness. In addition, nothing in the record demonstrates that Sherard was prevented from asking the court to appoint an expert to review and testify about the DNA test results. Finally, Sherard not only had the opportunity to present the June 2014 report to the trial court, he introduced that report as an exhibit at the November 2019 hearing and questioned Haas extensively about it.

The real basis of Sherard's claim of harm is that if the trial court had held its hearing earlier, it would not have had the benefit of the August 2019 report stating that Sherard could neither be included nor excluded as a contributor to the DNA profile from the left neck swabs. Instead, the court would have had only the June

8

2014 report stating that he was excluded as a contributor. Significantly, Sherard does not dispute that the August 2019 report is based on a more advanced or precise scientific method than the June 2014 report, nor does he argue that the August 2019 report is inaccurate. His position is simply that the June 2014 report is favorable to him and the August 2019 report is not. Therefore, he concludes, he was harmed by the hearing delay because it allowed the trial court to consider the unfavorable report.

Harm analysis requires that "we consider whether a party had a right to that which the error denied." *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002). We cannot conclude that Sherard had a right to have the trial court's consideration of DNA test results limited to a report that was later determined to be inaccurate. Ironically, Sherard urges that "[t]he overarching purpose of chapter 64 of the Texas Code of Criminal Procedure is to facilitate the search for truth." The search for truth in this case was aided, not hindered, by permitting the trial court to consider both the June 2014 and August 2019 DNA test reports.

In any event, any error in delaying the Article 64.04 hearing is also harmless because the June 2014 report does not create a reasonable probability that Sherard would not have been convicted if that report had been available at the time of trial. As explained below in the context of Sherard's third point, excluding him as a contributor to the DNA profile from the victim's neck does not cast affirmative doubt on the validity of his conviction for sexual assault. *See Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019) (stating that excluding defendant as major

contributor to tested items was insufficient, in and of itself, to satisfy Article 64.04 burden).

Assuming without deciding that the trial court erred by not holding an Article 64.04 hearing closer in time to the issuance of the June 2014 report, we hold that the error did not affect Sherard's substantial rights and is harmless. *See* Tex. R. App. P. 44.2(b). We overrule Sherard's first point.

**Withholding Exculpatory Evidence**

In his second point, Sherard asserts that the State withheld exculpatory evidence by failing to timely disclose the June 2014 report. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); Tex. Code Crim. Proc. Ann. art. 39.14(k). He contends that he was not aware of the report's existence until the State appended it to its September 2019 motion seeking a "no reasonable probability of nonconviction" finding. In support of this contention, Sherard asks us to infer that he must not have been aware of the June 2014 report because he did not mention that report in his April 2016 motion asking the court to appoint new counsel.

The State asserts that it did timely disclose the June 2014 report[3] and appends documents to its brief supporting that assertion. But because those documents were not before the trial court, we cannot consider them in resolving this appeal. *See Asberry v. State*, 507 S.W.3d 227, 229 (Tex. Crim. App. 2016) (holding that appellate

---

[3]The State also argues that Article 39.14(k) does not apply to this case and that *Brady* does not impose any postconviction duty to disclose. Our disposition of Sherard's second point renders it unnecessary to address these arguments.

10

court considers all evidence that was before the trial court before it made its ruling). We cannot fault the State for omitting these documents from the record, though, because the record also reflects that Sherard never complained in the trial court about any failure to disclose exculpatory material. In other words, the State had no reason to introduce evidence establishing that it timely disclosed the June 2014 report because it was not made aware that there was any dispute about the matter.

To preserve error for appellate review, a party must have made a complaint to the trial court "by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Clarke v. State*, 270 S.W.3d 573, 579 (Tex. Crim. App. 2008); *see* Tex. R. App. P. 33.1. This requirement applies to *Brady* error. *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999); *In re A.C.*, 48 S.W.3d 899, 905 (Tex. App.—Fort Worth 2001, pet. denied).

One of the purposes of the preservation rule is to afford opposing counsel an opportunity to respond to the complaint. *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). In this case, if Sherard had raised his *Brady* complaint in the trial court, the State would have had the opportunity to demonstrate on the record that the complaint lacked merit. Because Sherard did not make the trial court aware of his complaint, the alleged error is not preserved for our review. *See* Tex. R. App. P. 33.1. We overrule Sherard's second point.

**"No Reasonable Probability of Nonconviction" Finding**

### Article 64.04 standards

In his final point, Sherard asserts that the trial court erred by finding that there is no reasonable probability that he would not have been convicted if the DNA test results had been available at the time of trial.

The standard a trial court applies in making its Article 64.04 finding is whether the DNA test results "cast affirmative doubt upon the validity of the inmate's conviction." *Flores v. State*, 491 S.W.3d 6, 9 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (quoting *Raby v. State*, No. AP–76,970, 2015 WL 1874540 at *5–6 (Tex. Crim. App. Apr. 22, 2015) (not designated for publication)). We, in turn, review the trial court's Article 64.04 finding by applying a bifurcated standard of review—we afford "almost total deference to a trial court's resolution of historical facts and mixed questions that turn on credibility and demeanor, but we review de novo mixed questions that do not turn on credibility and demeanor and questions of law." *Dunning*, 572 S.W.3d at 692 (citing *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)). In addition, "[w]hen the trial court does not enter separate findings, we imply findings necessary to support the ruling so long as they are reasonably supported by the record." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)).

### Sherard's guilty plea

While a guilty plea does not preclude a favorable Article 64.04 finding, it is "typically strong evidence supporting a non-favorable finding," and should be given

great weight "if there is no reason to believe that [the guilty] plea was inaccurate or unreliable." *Id.* at 694–95. Sherard contends that his guilty plea should not be given great weight because it was involuntary.

Sherard testified that he felt pressured to plead guilty and that he was under the influence of medication in May 2008 when he signed a judicial confession and entered his guilty plea in court.[4] But he also testified that he did not tell his attorney at the time of his plea that he was taking medication or that he felt pressured to plead guilty. In fact, the record does not contain any indication that Sherard asserted that his plea was involuntary until such an assertion was mentioned in a court memorandum dated July 2010—over two years after Sherard entered his plea.

Assessing the voluntariness of Sherard's guilty plea required the trial court to resolve historical facts and mixed questions that turned on Sherard's credibility and demeanor. We therefore give almost total deference to the trial court's implied finding that Sherard's guilty plea was, in fact, voluntary. *See id.* at 692. As a result, that guilty plea weighs heavily in support of the court's nonfavorable Article 64.04 finding. *See id.* at 694.

We now address whether Sherard's guilty plea, judicial confession, and handwritten confession are "so undermined by the [DNA] test results that it is

---

[4]Sherard does not argue that his December 8, 2006 handwritten confession (which was given less than two months after the offense is alleged to have been committed) was made under duress or under the effect of medication. He does not address that confession at all.

reasonably probable that a fact finder would not have convicted [him] had the tests been available at trial despite the inculpatory evidence." *Id.*

**The DNA laboratory reports**

The trial court had before it two DNA laboratory reports, one that excluded Sherard as a contributor to the DNA profile retrieved from the victim's neck and one that neither included nor excluded him as a contributor to that DNA profile. The trial court also heard testimony that the second report was a reinterpretation of the original DNA samples using a new method capable of capturing more data. This more precise method revealed the presence of a trace third contributor that was not seen in the June 2014 test and rendered the test results inconclusive concerning whether Sherard was or was not a contributor.

The inconclusive August 2019 test results do not cast affirmative doubt on the validity of Sherard's conviction. *See Flores*, 491 S.W.3d at 9 (reciting affirmative doubt standard); *see also Cate v. State*, 326 S.W.3d 388, 390 (Tex. App.—Amarillo 2010, pet. ref'd) (stating that inconclusive evidence does not make innocence more or less probable). Those results also do not call into question the accuracy or reliability of Sherard's guilty plea; they only "muddy the waters." *See Dunning*, 572 S.W.3d at 695. Indeed, the same is true of the June 2014 test results.

Sherard was indicted for causing the female sexual organ of a child younger than seventeen years of age to contact his sexual organ. *See* Tex. Penal Code Ann. § 22.011(a)(2). That is the offense to which he confessed and pleaded guilty, and the

14

offense for which he was convicted. The June 2014 report states that Sherard is excluded as a contributor to the DNA profile from the victim's *neck*. The neck is not a sexual organ. Further, it would not have been necessary for Sherard to touch the victim's neck in order to commit the offense. Consequently, even if Sherard were excluded as contributing to the DNA profile taken from the left neck swabs, that exclusion does not cast affirmative doubt on the validity of his conviction. *See Dunning*, 572 S.W.3d at 693; *Flores*, 491 S.W.3d at 9. Again, it would only "muddy the waters." *See Dunning*, 572 S.W.3d at 695.

Finally, Sherard argues that the May 2014 forensic biology laboratory report exculpates him because it states that a presumptive test for the presence of semen on a vaginal swab was negative and that semen specific constituents, but not spermatozoa, were detected on a vaginal smear slide. He argues that this report supports his defense that no offense occurred. But Haas testified that no semen would be present if there had been no ejaculation. And Sherard's handwritten confession states that he attempted to put his penis into the victim but was unsuccessful. The mere absence of semen in the victim's biological samples thus has little to no exculpatory value.

Giving due weight to the inculpatory evidence—including Sherard's guilty plea and confessions—and recognizing that the Crime Lab reports have little to no exculpatory value, we conclude that the trial court did not err by finding that there is

15

no reasonable probability that Sherard would not have been convicted if the DNA test results had been available at the time of trial. We overrule Sherard's third point.

**Post-Hearing DNA Test Results**

In his reply brief, Sherard informs us of a "factual matter" that arose after the parties' opening briefs were filed. He asserts that the major contributor to the DNA profile from the left neck swabs has now been identified, and he attaches documents to his brief in support of that assertion. The State acknowledges that the major contributor has been identified but argues that this new identification has no bearing on our review of the trial court's Article 64.04 finding. Neither party cites to any authority permitting us to consider evidence that was not before the trial court.

The Court of Criminal Appeals has explained that the scope of an appellate court's review of an Article 64.04 finding is "all of the evidence that was before the trial court before it made its ruling." *Asberry*, 507 S.W.3d at 229. The information on which Sherard now relies was not before the trial court before it made its ruling. It is therefore not within our scope of review and we decline to consider it.[5]

---

[5]We note, however, that whether the major contributor to the DNA profile has been identified does not change the fact that Sherard may or may not be an additional contributor. The DNA results remain inconclusive on that point.

16

# CONCLUSION

We affirm the trial court's finding that there is no reasonable probability that Sherard would not have been convicted if the DNA test results had been available at the time of trial.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 13, 2021